**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHARLES C. WILLIAMS, | : | **Civil Action No: 24-cv-1336** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF HARTFORD; CHERYL GOGINS; | : | *Jury Demanded* |
| PHILIP FUSCHINO, MANUEL PACHECO, DOM | : | |
| AGOSTINO, ANDREW WEAVER, AND TERRY | : | |
| WALLER; | : | |
| *Defendants.* | : | February 7, 2025 |

**AMENDED COMPLAINT**

## A.      Introduction

1.      In *Williams v. Commissioner*, 221 Conn.App. 294 (2023), the Plaintiff's

wrongful convictions for unlawful restraint in the first degree and being a persistent felony

offender were vacated and reversed, and on February 15, 2024, the charges were fully and

finally dismissed. But Plaintiff was incarcerated for 3,338 days and suffered grievous physical,

emotional, and reputational harm because of the Defendants' outrageous misconduct, which the

Connecticut state courts determined violated the Plaintiff's constitutional rights. Accordingly,

the Plaintiff brings this federal civil rights action against the Defendants to recover damages

under 42 U.S.C. § 1983 and to hold them accountable for their violations of his rights.

2.      As detailed herein, the Hartford Police Department (HPD) has a longstanding

custom and practice of withholding exculpatory evidence in serious felony cases. This

unconstitutional pattern of violations of *Brady v. Maryland*, 373 U.S. 83 (1963) has led to the

wrongful convictions of numerous innocent men in Hartford, Connecticut, including Donald

Raynor, Miguel Roman, Alfred Swinton, Hubert Thompson, Derrick Taylor, and James

Tillman. In each of these cases, as in Plaintiff's, HPD officers suppressed material evidence

favorable to the accused, resulting in innocent men being sent to prison for crimes they did not commit.

3. The City of Hartford and HPD policymakers have long been on actual notice of this pattern and practice of *Brady* violations by Hartford police, but have deliberately failed to take any meaningful corrective action. A 2011 outside audit of HPD's Internal Affairs Division (IAD) revealed widespread failures to properly investigate citizen complaints, missing IAD files, and lack of compliance with a federal consent decree requiring timely investigations. The report put Hartford officials on notice of serious deficiencies in supervision and discipline that allowed officer misconduct to go unchecked. Yet the City failed to implement the recommended reforms or otherwise address these systemic issues.

4. The Defendants in this case exemplified HPD's practice of violating suspects' due process rights by suppressing exculpatory evidence. As the Connecticut Appellate Court found, Defendants Gogins and Fuschino had in their possession a detailed statement from the complaining witness that critically omitted any allegation of the assault for which Mr. Williams was charged. Despite the clearly exculpatory nature of this statement, these Defendants never disclosed it to the prosecutor or the defense before trial. Defendant Gogins also withheld an August 2013 police report further undermining the complaining witness's account and failed to correct misrepresentations and material omissions in the arrest warrant application. The other individual Defendants were aware of but failed to intervene to prevent these *Brady* violations.

5. Plaintiff's wrongful prosecution and years of imprisonment were the direct result of the City of Hartford's deliberately indifferent custom and practice of condoning *Brady* violations by its officers. If the Defendants had investigated the case properly, documented and disclosed the exculpatory evidence they obtained as the constitution requires, Plaintiff never

would have been prosecuted, let alone convicted and imprisoned. Plaintiff therefore brings this action to vindicate his constitutional rights and obtain redress for the grievous losses inflicted upon him by the Defendants' misconduct.

### B.    Parties

6.    Plaintiff **CHARLES WILLIAMS** is a domiciliary of the State of Connecticut, a resident of Hartford.

7.    Defendant **CITY OF HARTFORD** is, and at all times relevant to this Complaint was, a municipality located in the State of Connecticut. The City of Hartford was officially responsible for the policies, practices, and customs of the Hartford Police Department (HPD), and was the employer and policymaker of the individual Hartford Police Officers in this matter.

8.    Defendants **CHERYL GOGINS**, **PHILIP FUSCHINO**, **MANUEL PACHECO**, **ANDREW WEAVER**, and **DOM AGOSTINO**, as relevant to this Complaint, were officers of the HPD acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of Hartford and HPD. They are sued in their individual capacities.

9.    Defendant **TERRY WALLER** as relevant to this Complaint was an employee of the City of Hartford's Fire Department acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of Hartford. He is sued in his individual capacity.

10.    Defendants **GOGINS, FUSCHINO, PACHECO, WEAVER, AGOSTINO,** and **WALLER** were personally involved in the investigation of the charges and in Mr. Williams's arrest, prosecution, and conviction. Each of these individuals had knowledge of the

3

means and methods of the investigation, the lack of probable cause implicating Mr. Williams, the existence of suppressed and/or withheld material exculpatory evidence, the lack of forensic or physical evidence, and despite having an opportunity and a duty to do so, none took any action to prevent the unconstitutional activities described herein, but instead conspired together and furthered the scheme to suppress and/or withhold exculpatory evidence and continuously deprive the Plaintiff of liberty as a result.

**C.      Jurisdiction**

11.      Because this action is brought pursuant to 42 U.S.C. § 1983, jurisdiction is invoked pursuant to 28 U.S.C. § 1331 & 1343.

12.      Venue is proper in this Court by virtue of 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Connecticut.

13.      This Court has supplemental jurisdiction over Mr. Williams's state civil rights and other state law claims by 28 U.S.C. § 1367(a).

14.      The claims in this action are not barred by the statute of limitations, nor are they barred by res judicata or collateral estoppel based on the judgments and orders in *Williams v. Hartford Police Dept., et al.*, 3:15-cv-00933-AWT, and *Williams v. Hartford States Attorney Office et al.*, 3:18-cv-01700-KAD, because (a) the claims brought herein are premised upon Mr. Williams's false arrest and false conviction for unlawful restraint in the first degree and being a persistent dangerous felony offender, claims which were previously barred by the rule of *Heck v. Humphrey*, and only accrued upon the dismissal of the charges in the underlying criminal matter, on February 15, 2024; and (b) the *Brady* violations causing his wrongful conviction were not known to him and could not have been raised, let alone fully and fairly litigated, in those prior lawsuits.

4

**D.**     **Factual Allegations**

15.     The Plaintiff was in a relationship with an individual, who will be referred to as complainant, for several years. During this relationship, in March 2011, Plaintiff started a relationship with another woman, while still living with the complainant. While the Plaintiff continued his relationship with the complainant, he got the "other woman" pregnant, which the Plaintiff did not disclose to the complainant, out of a fear for retaliation.

16.     On January 29, 2012, the Plaintiff's first child was born, which the Plaintiff did not disclose to the complainant. Plaintiff and the complainant were in a relationship and living together at the time.

17.     Then, in February 2012, plaintiff left the home of the complainant without warning or explanation, and did not return.

18.     In May 2012, the complainant learned why the Plaintiff had ended the relationship, and began threatening the Plaintiff.

19.     Beginning at that time, the complainant began a campaign of harassment motivated out of jealousy toward and revenge against the Plaintiff, filing false reports in an attempt to falsely incriminate the Plaintiff in a major crime in the town of Bloomfield, Connecticut.

20.     In June 2012, the complainant went to the Bloomfield Police Department, and filed twelve false police reports in an attempt to falsely incriminate the Plaintiff for non-existing crimes, which resulted in the complainant herself being arrested for false reporting and making a false statement.

21.     In one incident, on June 24, 2012, the complainant and her daughters staged a home invasion and burglary in an attempt to falsely incriminate the Plaintiff for a major crime.

5

If not for the investigation of Detective Suzanne Laiuppa, the complainant might have succeeded. But the detective's findings were that the home invasion was staged. As a result of this conduct, the complainant and her daughters were placed on no-contact orders and protective orders in 2012-2013.

22.     In January 2013, the complainant made contact with the Plaintiff even though she still had a no-contact order. Complainant stated that she had received counseling for her anger problems and apologized for creating a disturbance at the Plaintiff's child's home, referring to an incident in December 2012 when the complainant had come to the Plaintiff's home armed with a knife.

23.     Despite the complainant's past issues, the Plaintiff went back to having a consensual sexual relationship with the complainant in January 2013 through February 2013.

24.     In February 2013, the complainant asked the Plaintiff to help the complainant in a case that was pending in Hartford Superior Court for false reporting and false statements. Complainant told plaintiff, she will check into the Institute of Living to avoid prosecution for her case. Complainant said she could not stand any more convictions on her record. Complainant said she was going to trial and asked Plaintiff to lie for her as a witness. Complainant said she was scared to go to trial. Plaintiff refused to help the complainant in this way.

25.     On February 18, 2013, the complainant texted the Plaintiff asking him to go to her job in Hartford, Connecticut. On that date, the complainant said she was pregnant by the Plaintiff. They subsequently entered into a heated conversation. Plaintiff believed the complainant was lying.

26.     After telling the Plaintiff about the alleged pregnancy, the complainant asked Plaintiff again to lie for her in court. Plaintiff still refused. Plaintiff then left.

27.     The following week, the complainant began making threats to put the Plaintiff in jail for the rest of his life. Complainant said she is dating a "guy named Terry," that Terry was "a high-ranking city [of Hartford] official," and that Terry had helped get her a job "off the books."

28.     On February 27, 2013, the Plaintiff stopped all communication with the complainant, after providing her with funds for an abortion.

29.     On February 28, 2013, the complainant reported that she had been assaulted, specifically, that she had been punched in the nose. The complainant did not identify the Plaintiff as her attacker.

30.     On March 6, 2013, at the complainant's behest, the defendant TERRY WALLER called the Plaintiff's mother's home and sister's home asking for the Plaintiff. Defendant Waller threatened Plaintiff that if he did not help the complainant, he would have Plaintiff set up by the Hartford police and harassed non-stop.

31.     Soon after that conversation, the complainant sent Plaintiff a Facebook message.

32.     Plaintiff reported this incident to the Hartford Police Department.

33.     Dom Agostino received the Plaintiff's incident report, and with deliberate indifference and/or malice, did nothing with the report, and responded negatively to the Plaintiff.

34.     When Mr. Williams appeared in-person at the police station, Mr. Agostino refused to receive the phone number of the call that Mr. Williams had received, and threatened Mr. Williams to leave before he got arrested.

35. The Hartford Fire Department and the Hartford Police Department share a headquarters, the Hartford Emergency Complex.

36. Upon information and belief, Defendant Waller told someone in the Hartford Police Department that he had a situation he needed help with. Defendant Waller told that individual that complainant needed protection from the Plaintiff. That individual then told Defendant Waller that Defendant Gogins had been assigned to the investigation.

37. On April 16, 2013, Defendant Gogins took a statement from the complainant, which for the first time identified the Plaintiff as the person who punched her on February 28. The complainant informed Defendant Gogins that she received treatment that day at Hartford Hospital. Although the complainant apparently was comfortable accusing the Plaintiff of the assault, and of being "physically abusive over a number of years," the complainant did not accuse the Plaintiff of sexual assault or unlawful restraint on February 14, as she would later accuse the Plaintiff, and as the Plaintiff would later be falsely charged, arrested, tried, and convicted.

38. On April 24, the complainant gave a sworn statement to Defendant Fuschino recounting the history of her relationship with the Plaintiff. The statement was extremely detailed, covering a period of six years and spanning seven pages.

39. In the April 24 statement, the complainant never mentioned any sexual assault or violent restraint on February 14.

40. In the April 24 statement, the complainant falsely alleged that on February 22, 2013, Plaintiff had burglarized her house while she was out, an event that she swore was captured on her home security system.

41.    From April to at least August 26, 2013, the complainant was in contact with Defendant Gogins, but never provided video evidence to corroborate the alleged February 22 burglary.

42.    On or about August 12, 2013, Defendant Gogins submitted an arrest warrant application to Assistant State's Attorney Carlucci regarding the alleged February 22 burglary, but Carlucci refused to sign the application.

43.    On August 27, 2013, Defendant Gogins filed a report following up on the alleged February 22 burglary, which noted the complainant's failure to substantiate the allegation with the video evidence that the complainant had promised.

44.    On September 20, 2013, Defendant Gogins took a false statement from the complainant that for the first time accused the Plaintiff of raping her on February 14, 2013.

45.    Defendant Gogins was aware that there were no corroborating photographs, witnesses, video evidence, rape kit, medical records, or other evidence to corroborate the complainant's false statement.

46.    Defendant Gogins was aware that the complainant had gone to Hartford Hospital on February 28, and that there were medical records likely to contain potentially exculpatory information, but deliberately or recklessly chose not to procure those medical records—or did but disregarded them.

47.    Defendant Gogins was aware of the complainant's history of false reporting.

48.    Defendant Gogins was aware of the complainant's recent arrest for false statements and false reporting.

49.    Defendant Gogins obtained medical records from Middlesex Hospital in which the complainant reported that she had learned on March 20, 2013 that she was pregnant and

claimed she knew she got pregnant on February 14 when she was sexually assaulted. But Defendant Gogins recklessly or deliberately failed to obtain the Hartford Hospital records from February 28 that would have proven that the complainant had learned she was pregnant on that date.

50. From October 2013 to April 2014 Defendant Gogins made efforts to secure fetal DNA from the abortion procedures performed at Middlesex Hospital.

51. Once Defendant Gogins obtained the fetal DNA, she – without even arguable probable cause – sought a warrant to obtain DNA from Plaintiff to compare the DNA of the Plaintiff to the DNA of the fetal tissue.

52. After obtaining the warrant, on April 25, 2014, Defendant Gogins, along with Defendant Manuel Pacheco and a number of Department of Correction officials, obtained a buccal swab with the Plaintiff's DNA, by force.

53. On July 16, 2014, Defendant Gogins obtained DNA results from the Connecticut State Forensic Laboratory. The report stated that "Charles Williams cannot be eliminated as the paternal contributor to the fetal DNA profile."

54. On July 17, 2014, Defendant Gogins sought an arrest warrant for the Plaintiff. The application for an arrest warrant contained many omissions of material facts, made with deliberate or reckless disregard of the truth, including:

    a. The April 24 sworn statement of the complainant, which never mentioned any sexual assault or unlawful restraint by the Plaintiff;

    b. The false allegation of a burglary on February 22, which Defendant Gogins was in contact with the complainant about from April to August of 2013, but

which the complainant never substantiated with video evidence that she swore she had;

c. The August arrest warrant application that the State's Attorney had refused to sign, because of doubts about the complainant's credibility;

d. The complainant's history of false reporting;

e. The complainant's arrest and prosecution for false reporting and false statements;

f. The circumstances of the complainant's visit to Hartford Hospital on February 28, in which the complainant actually had learned she was pregnant;

55. Defendant Gogins's application for arrest warrant contained an additional material misstatement of fact, made with deliberate or reckless disregard for the truth, in that it stated that the DNA report "determined that . . . Williams's DNA <u>did match</u> as the paternal contributor to the fetal DNA profile," when in fact the DNA report merely said that the Plaintiff "<u>cannot be eliminated</u> as the paternal contributor to the fetal DNA profile."

56. Defendant Gogins's suppression of material exculpatory information from the arrest warrant was objectively unreasonable, violated clearly established constitutional law, and violated the Plaintiff's due process rights.

57. Defendant Andrew Weaver was Defendant Gogins's supervisor and was responsible for verifying and supervising Defendant Gogins's application for an arrest warrant of the Plaintiff. Despite this obligation, and the many material misstatements and omissions contained within the application, Defendant Weaver ratified and acquiesced in the application, and signed it, and joined in its transmission to the State's Attorney's Office for the Judicial

District of Hartford of the Connecticut Superior Court. The State's Attorney's Office were therefore left unaware of the omissions of material facts, material misrepresentations, and suppression of exculpatory information.

58.     On or about July 21, 2014, a Judge of the Superior Court signed the arrest warrant, and because of the material omissions and misrepresentations contained therein, found probable cause. But for the material omissions and misrepresentations contained therein because of Defendant Agostino, Gogins, Pacheco, and Weaver's misconduct, the prosecutor would not have signed the arrest warrant application, and the judge would not have found probable cause, because not even arguable probable cause would have existed for the arrest warrant.

59.     On July 29, 2014, the arrest warrant was served on the Plaintiff and his false incarceration on the charges initiated by Defendant Gogins and Weaver began.

60.     Plaintiff was put on trial on two counts of sexual assault in the first degree and one count of unlawful restraint in the first degree in December 2014.

61.     Through the entirety of the trial, neither the April 24 sworn statement made by the complainant to Defendant Fuschino nor the August 27 police report created by Defendant Gogins were ever handed over to prosecutors in the State's Attorney's Office, let alone Plaintiff and his attorneys.

62.     The April 24 sworn statement and the August 27 police report contained material exculpatory information but were suppressed by the defendants and never provided to prosecutors or the defense.

63.     Following the trial, the jury found the Plaintiff not guilty on both counts of sexual assault in the first degree, but found the Plaintiff guilty on the charge of unlawful restraint in the first degree.

64. Afterward, the Plaintiff pleaded guilty to being a persistent serious felony offender, which was a necessary and unavoidable result of his conviction.

65. Thereafter, the Connecticut Superior Court, *Suarez, J.*, sentenced the Plaintiff to a prison sentence of ten years of imprisonment.

66. In *Williams v. Commissioner*, 221 Conn.App. 294 (2023), the Connecticut Appellate Court concluded that the suppression of the April 24 sworn statement was a violation of *Brady v. Maryland*, without reaching an independent separate violation based on the suppression of the August 27 police report, and required the vacatur and reversal of the judgment of conviction for unlawful restraint in the first degree.

67. In addition to Mr. Williams's case, HPD officers engaged in a pattern of withholding exculpatory evidence and causing wrongful convictions in multiple cases in Hartford, Connecticut in recent history, including Donald Raynor, Miguel Roman, Alfred Swinton, Hubert Thompson, Craig Gore, Derrick Taylor, Corey Turner, and James Tillman. These cases demonstrate a clear pattern and practice by HPD of withholding exculpatory evidence and using suggestive identification procedures to wrongfully convict innocent people. This custom and practice of *Brady* and due process violations was a proximate cause of the constitutional injuries inflicted on the Plaintiff.

68. The City of Hartford had actual or constructive notice of this pattern of misconduct by HPD officers by virtue of a 2011 outside audit of the HPD Internal Affairs Division, which found widespread failures in the citizen complaint investigative process, violations of a federal consent decree, missing case files, improper documentation practices, and failure to develop a written policy and production protocol for *Brady* materials. Despite being on notice of these deficiencies that allowed serious misconduct like the suppression of

exculpatory evidence to persist unchecked, the City of Hartford and HPD leaders deliberately chose not to implement the recommended reforms or take other necessary corrective action. The City failed to adopt policies requiring disclosure of exculpatory evidence, to adequately train and supervise officers on their *Brady* obligations, or to meaningfully investigate and discipline officers who commit such violations.

69.    The City's inaction in the face of this notice amounts to deliberate indifference to the risk of *Brady* violations and wrongful convictions. By perpetuating a culture of secrecy and lack of accountability, the City's policies and practices were the moving force behind the unconstitutional suppression of evidence in Mr. Williams's case.

70.    As a direct and foreseeable consequence of the Defendant City of Hartford's deliberate indifference and failure to adequately train, supervise and discipline its officers to prevent *Brady* violations and other unconstitutional withholding of exculpatory evidence, Mr. Williams was deprived of his liberty and suffered the additional injuries and damages set forth below.

### E.    Claims for Relief

#### First Claim: 42 U.S.C. § 1983 Violation of *Brady*
#### *April 24 Sworn Statement*

##### *Against Defendants Gogins and Fuschino*

1-70.    The allegations above are incorporated herein as if fully stated here.

71.    Defendants Gogins and Fuschino, despite having knowledge that it contained material exculpatory information, never turned over the April 24 sworn statement to the State's Attorney or the Connecticut Superior Court or to the Plaintiff during his criminal proceedings.

72.    Defendants Gogins and Fuschino withheld and/or suppressed this material exculpatory information because in the April 24 sworn statement, the complainant gave a

14

statement containing incidents dating from 2007 through 2013, about her relationship with the Plaintiff, and alleged all sorts of abuse that the Plaintiff allegedly put her through. But in all the allegations of abuse, the complainant never mentioned any kind of sexual abuse by the Plaintiff.

73.    As the Connecticut Appellate Court concluded, the April 24 sworn statement was exculpatory, withheld from the defense, and material.

74.    Defendants performed the above-described acts under color of state law, with a sufficient level of culpability to hold them liable in damages for their objectively unreasonable conduct. No reasonable officer would have believed this conduct was lawful. This conduct violated clearly established law. Continuing acts and omissions in failing to make the disclosures required under law caused Mr. Williams continuous harm.

75.    Accordingly, Defendants Gogins and Fuschino are liable to the Plaintiff for damages, including lost wages, lost earning capacity, loss of familial relationships, loss of liberty, damage to reputation, emotional distress, physical injury, and other harms and injuries to be proven at trial and determined by the trier of fact.

76.    Because Defendants Gogins and Fuschino's outrageous misconduct was willful, Plaintiff is entitled to punitive damages for the violations described herein.

### Second Claim: 42 U.S.C. § 1983 Violation of *Brady* *August 27 Police Report*

#### *Against Defendants Gogins and Weaver*

1-75.    The allegations above are incorporated herein as if fully stated here.

76.    Defendant Gogins, despite having knowledge that it contained material exculpatory information, never turned over her August 27 police report to the State's Attorney or the Connecticut Superior Court or to the Plaintiff during his criminal proceedings.

15

77.     Defendant Gogins withheld and/or suppressed this material exculpatory information because in the August 27 police report, it was confirmed that despite continuous contact between Defendant Gogins and complainant for months, complainant was unable to produce surveillance video to corroborate her allegation of a burglary committed by the Plaintiff on February 22, six days after the alleged sexual assault, and six days before the alleged physical assault. The August 27 police report also shows that as late as August 26, despite being in continuous contact with Defendant Gogins, the complainant did not even hint that anything had happened on February 14, let alone a sexual assault and unlawful restraint.

78.     At the Plaintiff's underlying criminal trial, the complainant claimed that although her home security system had captured the Plaintiff's presence at her house on February 14, she claimed she could not produce the video because she no longer had access to it when she reported the sexual assault to police in September. The August 27 police report would have shown that there was an additional instance in which the complainant had accused the Plaintiff of misconduct, and claimed that video footage existed of the occurrence, but failed to produce the video footage. It also would have shown that the complainant had access to her video surveillance system between February and September 2013, impeaching her contention that she had no access to the video surveillance because she had no access to her home.

79.     The frequent contact between Defendant Gogins and the complainant shown in the August 27 police report also would have undermined the credibility of any claim that the complainant was uncomfortable disclosing an allegation of sexual abuse to Defendant Gogins until September 2013.

80. The Connecticut Appellate Court did not reach the argument of whether the August 27 police report was material but the findings that it contained exculpatory information and were suppressed from the defense were undisturbed.

81. The August 27 police report was material.

82. Defendant Gogins performed the above-described acts and omissions under color of state law, with a sufficient level of culpability to hold her liable in damages for her objectively unreasonable conduct. No reasonable officer would have believed this conduct was lawful. This conduct violated clearly established law. Continuing acts and omissions in failing to make the disclosures required under law caused Mr. Williams continuous harm.

83. Defendant Weaver also failed to turn over the police report to the State's Attorneys, court, or the defense, despite having access to and knowledge of the police report, access to and knowledge of the arrest warrant, and having signed off on the arrest warrant. Defendant Weaver's omissions and failures were under color of state law, with a sufficient level of culpability to hold in liable in damages for his objectively unreasonable conduct. No reasonable officer would have believed this conduct was lawful. This conduct violated clearly established law. Continuing acts and omissions in failing to make the disclosures required under law caused Mr. Williams continuous harm.

84. Accordingly, Defendant Gogins and Defendant Weaver are liable to the Plaintiff for damages, including lost wages, lost earning capacity, loss of familial relationships, loss of liberty, damage to reputation, emotional distress, physical injury, and other harms and injuries to be proven at trial and determined by the trier of fact.

85. Because Defendant Gogins's and Defendant Weaver's outrageous misconduct was willful, Plaintiff is entitled to punitive damages for the violations described herein against each of the defendants.

### Third Claim: § 1983 Violation of *Brady*
### *Omissions and Misrepresentations in Arrest Warrant*

### *Against Defendants Gogins and Weaver*

1-85. The allegations above are incorporated herein as if fully stated here.

86. Defendant Gogins's omissions and representations in the arrest warrant affidavit causing the arrest and prosecution of the Plaintiff, which were made with deliberate and/or reckless disregard as to their falsity and which were material, violated the Plaintiff's clearly established constitutional right to due process under the rule of *Brady v. Maryland* and its progeny.

87. Defendant Weaver's failures to correct the misrepresentations and omissions in the arrest warrant affidavit, which he signed, and which he had actual or constructive knowledge of its falsity, violated the Plaintiff's clearly established constitutional right to due process under the rule of *Brady v. Maryland* and its progeny.

88. The defendants' failures described above were objectively unreasonable, and deprived not only the defense but also the prosecution of material exculpatory information.

89. Accordingly, Defendant Gogins and Defendant Weaver are liable to the Plaintiff for damages, including lost wages, lost earning capacity, loss of familial relationships, loss of liberty, damage to reputation, emotional distress, physical injury, and other harms and injuries to be proven at trial and determined by the trier of fact.

90.    Because Defendant Gogins's and Defendant Weaver's outrageous misconduct was willful, Plaintiff is entitled to punitive damages for the violations described herein against each of the defendants.

## Fourth Claim: 42 U.S.C. § 1983 Failure to Intervene

### *Against Defendants Fuschino, Pacheco, Agostino, and Weaver*

1.    The allegations of the first Three Counts are incorporated as if fully stated here.

2.    Defendants Fuschino, Pacheco, Agostino, and Weaver were fully cognizant of the misconduct described above, and had the power, ability, opportunity, and duty to prevent this misconduct. But instead of reporting this misconduct to superiors, or intervening to stop it, including by disclosing the suppressed and/or withheld material exculpatory information described herein, each of the defendants did nothing.

3.    Each of these defendants failed to intervene to prevent the constitutional violations established herein, despite knowledge and a reasonable opportunity to intervene and prevent them. Each of the defendants' failure to intervene was objectively unreasonable and in violation of clearly established law.

4.    As a result, Mr. Williams was deprived of liberty and suffered the damages herein alleged.

5.    Accordingly, Mr. Williams is entitled to compensatory and punitive damages from each of the defendants.

## Fifth Claim: 42 U.S.C. § 1985 Civil Rights Conspiracy

### *Against Defendants Fuschino, Pacheco, Agostino, Weaver, Waller, and Gogins*

1.    The allegations of the first Four Counts are incorporated as if fully stated here.

19

2.      Defendants Fuschino, Pacheco, Agostino, Weaver, Waller, and Gogins conspired to deprive the Plaintiff of his constitutional right to due process and a fair trial through the misconduct alleged herein.  It is reasonable to infer an agreement from their conduct.

3.      Each of the defendants was aware of the scheme to suppress and/or withhold material exculpatory information from the Plaintiff, and were aware of the foreseeable harm that this scheme posed to the Plaintiff's constitutional rights, but took discrete actions to further the conspiracy, alleged herein.

4.      As a result, Mr. Williams was deprived of liberty and suffered the damages herein alleged.

5.      Accordingly, Mr. Williams is entitled to compensatory and punitive damages from each of the defendants.

### Sixth Claim: 42 U.S.C. § 1983 Municipal Liability

#### *Against Defendant City of Hartford*

1.      The allegations of the Five Counts above are incorporated herein as if fully stated here.

2.      The Hartford Police Department had a consistent and widespread practice of suppressing exculpatory information in serious felony cases, which constitutes a municipal custom or usage.

3.      The City and its municipal policymakers were deliberately indifferent to the suppression of exculpatory information and omission of exculpatory information from arrest warrant applications, including but not limited to in this particular case.

4.      In this case, the City and its municipal policymakers participated in or turned a blind eye toward the outrageous misconduct of the defendants, acquiescing in and/or ratifying

their misconduct and refusing to train, supervise, investigate, discipline, or put an end to these practices described above.

5.     The municipal customs or usages and deliberate indifference described herein caused the Plaintiff's damages.

6.     The City of Hartford is therefore liable to the Plaintiff for his unlawful injuries, except as to punitive damages, as punitive damages are not available against municipalities under § 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

## Seventh Claim: Negligence, under Connecticut Law

### *Against Defendants Fuschino, Pacheco, Agostino, Weaver, Waller, and Gogins*

1.     The allegations of the first Six Counts above are incorporated herein as if fully stated here, except that in the alternative to intentional misconduct, it is alleged that the defendants were negligent.

2.     Each of the defendants owed the Plaintiff duties in their investigation of a crime in which he was a suspect, including but not limited to duties to exercise reasonable care in their investigation; to reasonably pursue and disclose exculpatory evidence, including as required by statute and the Constitution; to refrain from omitting exculpatory evidence from the arrest warrant; to conduct fair and nonsuggestive identification procedures; and/or to intervene to prevent other law enforcement officers from engaging in misconduct.

3.     Mr. Williams was a readily identifiable person likely to suffer imminent harm from a breach of the foregoing duties.

4.     The defendants breached these duties as set forth above including but not limited to by failing to disclose exculpatory information, failing to intervene to prevent other officers from failing to disclose exculpatory information, and by suppressing exculpatory information.

67.     As a result, Mr. Williams suffered the damages alleged.

21

### **Eighth Claim: Indemnification under Conn. Gen. Stat. § 7-465**

#### *Against Defendant City of Hartford*

1. Plaintiff's seventh claim is restated as if incorporated fully herein.

2. Defendants Fuschino, Pacheco, Agostino, Weaver, Waller, and Gogins were Hartford municipal employees acting in the performance of their duties within the scope of their employment by Defendant City of Hartford and under color of law.

3. These defendants infringed Plaintiff's civil rights and caused physical damages to his person and property while performing their duties and acting within the scope of their employment.

4. As a result, the Plaintiff suffered the damages herein alleged.

5. Defendant City of Hartford is liable for Plaintiff's damages under Connecticut General Statutes § 7-465.

6. Within six months after the foregoing causes of action accrued, pursuant to § 7-465, namely, on March 11, 2024, Plaintiff sent to the clerk of the City of Hartford written notice of his intention to commence this action and of the time when and the place where the damages were incurred or sustained, by U.S. Certified Mail.

### **Ninth Claim: Direct Action under Conn. Gen. Stat. § 52-557n**

#### *Against Defendant City of Hartford*

1. Plaintiff's Seventh and Eighth Claims are incorporated as if fully stated herein.

2. Defendants Fuschino, Pacheco, Agostino, Weaver, Waller, and Gogins were Hartford municipal employees acting in the performance of their duties within the scope of their employment by Defendant Hartford under color of law.

22

3.      Each of the defendants owed the Plaintiff duties in their investigation of a crime in which he was a suspect, including but not limited to duties to exercise reasonable care in their investigation; to reasonably pursue and disclose exculpatory evidence, including as required by statute and the Constitution; to refrain from omitting exculpatory evidence from the arrest warrant; to conduct fair and nonsuggestive identification procedures; and/or to intervene to prevent other law enforcement officers from engaging in misconduct.

4.      Plaintiff was a readily identifiable person likely to suffer imminent harm from a breach of any of the foregoing duties.

5.      The defendants breached those duties by their conduct set forth above.

6.      As a result, Plaintiff suffered the damages hereinbefore alleged.

7.      Defendant City of Hartford is liable for those damages under General Statutes § 52-557n.

## **Tenth Claim: Conn. Gen. Stat. §52-571k**
## **Police Officer Liability**

### *Against  Defendants Fuschino, Pacheco, Agostino, Weaver, and Gogins*

1-69.    The allegations of the first 69 paragraphs are restated as if fully stated here.

70.    Defendants Fuschino, Pacheco, Agostino, Weaver, and Gogins were police officers as defined in Conn. Gen. Stat. § 7-294a at all times relevant to this complaint.

71.    Defendants Fuschino, Pacheco, Agostino, Weaver, and Gogins, acting alone and in conspiracy with each other, deprived the Plaintiff of the equal protection of the laws of Connecticut and of the equal privileges and immunities under the laws of Connecticut, including without limitation the protections, privileges and immunities guaranteed under article first of the Constitution of Connecticut.

72.    Specifically, Defendants Fuschino, Pacheco, Agostino, Weaver, and Gogins deprived the Plaintiff of his right to due process and a fair trial by suppressing and/or withholding material exculpatory evidence, including but not limited to the April 24 sworn statement and the August 27 police report, and by making material misrepresentations and omissions in the arrest warrant application, as detailed in the preceding counts.

73.    The defendants' conduct was deliberate, willful, and committed with reckless indifference to the Plaintiff's rights.

74.    As a result of the defendants' violations, the Plaintiff suffered the damages alleged herein.

75.    The defendants did not have an objectively good faith belief that their conduct did not violate the law.

76.    Accordingly, under Conn. Gen. Stat. § 52-571k, the Plaintiff is entitled to equitable relief and damages from each of the defendants, including costs and reasonable attorney's fees.

77.    This action is timely under Conn. Gen. Stat. § 52-571k(g), as it is brought within one year of the dismissal of charges against the Plaintiff on February 15, 2024, when this cause of action accrued.

### F.    Prayer for Relief

WHEREFORE, the plaintiff respectfully requests the following relief:

A.  Compensatory damages equal to or greater than $25,000,000.00;

B.  Punitive damages against the individual defendants equal to or greater than $25,000,000.00;

C.  Trial by jury;

D.  Reasonable attorney's fees pursuant to 42 U.S.C. § 1988, Conn. Gen. Stat. § 52-571k, costs, and pre- and post-judgment interest; and

E.  Such other and further relief as the Court may deem proper.

Respectfully Submitted,

PLAINTIFF

By:_____/s/_____
Alexander T. Taubes, Esq.
Federal Bar No.: ct30100
Alexander T. Taubes
470 James Street, Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com